UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, | Case No. C09-5540 RJB |
| Plaintiffs, | ORDER DENYING DEFENDANT'S MOTION FOR STAY |
| v. | |
| DENNIS G. OTT, individually; DENNIS G. OTT, P.S., et al.., | |
| Defendants. | |

This matter comes before the court on the defendants' Motion for Stay (Dkt. 18). The court has considered the relevant pleadings and the file herein.

FACTUAL BACKGROUND

In July 2003, Dennis G. Ott or Dennis G. Ott, P.S. (Collectively, "Ott") filed a lawsuit on behalf of Steven F. McCoy and Peggy L. McCoy, husband and wife, in the Superior Court of Lewis County, Washington. Dkt. 1, Exhibit C; Dkt. 23. Through Ott, the McCoys asserted claims against the estate of the owner of a rock quarry on property adjacent to the McCoys' home (the "Hartstrom lawsuit"). *Id.* In February 2005, the court clerk in the Hartstrom lawsuit notified Ott that the lawsuit would be dismissed for want of prosecution unless, within thirty days, action of record was taken or application was made to the court. *Id.* In March 2005, the suit was dismissed for want of prosecution. *Id.*

In September 2007, Steven McCoy filed a Washington State Bar Grievance against Ott concerning

ORDER
Page - 1

his handling of the Hartstrom lawsuit. *Id.* In his response to the Bar Grievance, Ott attached copies of letters dated March 24, 2004, and February 18, 2005, which Ott represented he had sent to the McCoys to confirm that they had asked him to place the lawsuit on hold (March 24, 2004 letter), and subsequently, to advise them that the case could be dismissed if they did not proceed (February 15, 2005 letter). *Id.*

On November 2, 2007, Ott received a letter from the McCoys' new attorney requesting turnover of the file concerning Ott's representation of the McCoys in the Hartstrom lawsuit. *Id.*

In April of 2008, Ott applied for an insurance policy with Carolina Casualty Insurance Company ("Carolina Casualty"). *Id.* When Ott applied for the policy, he did not disclose any facts relating to the dismissal of the McCoy's Hartstrom lawsuit or the pending Bar Grievance filed by the McCoys. Dkt. 23. The insuring agreement of the Carolina Casualty policy, effective April 16, 2008 to April 16, 2009, provides that the policy covers claims for Wrongful Acts that are first made and reported during the policy period, provided that prior to the effective date of the policy, "the Insured did not know, or could not reasonably foresee, that such Wrongful Act might reasonably be expected to be the basis of a Claim." Dkt. 18; Dkt. 23. The policy defines "Wrongful Act" as "any actual or alleged act, omission, or Personal Injury arising out of Professional Services rendered by an Insured..." Dkt. 23.

In January 2009, the Bar Disciplinary counsel recommended that the Review Committee order the McCoy's Grievance to hearing. Dkt. 23.

In March 2009, the McCoys filed a legal malpractice action against Ott (the "McCoy" matter) in the Superior Court of Lewis County, Washington. Dkt. 1, Exhibit C; Dkt. 23. In the McCoy matter, the McCoys assert claims of legal malpractice/negligence, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent infliction of emotional distress. Dkt. 1, Exhibit A. Ott tendered the action to his insurer, Carolina Casualty, who agreed to defend him in the McCoy matter under a reservation of rights. *Id.*

In June 2009, Ott filed a Notice of Resignation in Lieu of Disbarment. *Id.* Attached to his notice, Ott submitted an affidavit admitting to facts relating to his handling of matters for various clients, including the McCoys. *Id.* Ott admitted in the affidavit that the March 24, 2004 and February 15, 2005 letters were fabricated, and that he had not advised the McCoys of the dismissal of the Hartstrom lawsuit. *Id.* Ott also acknowledged that he had received the November 2, 2007 letter from the McCoys' new

ORDER
Page - 2

1  attorney requesting turnover of the file concerning Ott's representation of the McCoys, and that he did not
2  respond to that letter. *Id.*

3  On September 4, 2009, with the McCoy matter pending in state court, Carolina Casualty initiated
4  this action against its insured, Ott, seeking a declaration that it has no duty to defend or indemnify Ott in
5  the McCoy matter. Dkt. 1. In its motion for summary judgment (Dkt. 17), Carolina Casualty contends
6  that there can be no genuine issue of material fact that, prior to the effective date of the policy, any
7  attorney with Ott's knowledge of various undisputed facts could have reasonably foreseen that the
8  McCoys might make a claim. Dkt. 17.

9  <u>DEFENDANT'S MOTION TO STAY</u>

10  On February 11, 2010, Ott requested that this court stay this coverage action by Ott's insurer,
11  plaintiff Carolina Casualty, pending the outcome of the McCoy matter against Ott in state court. Dkt. 18.
12  Ott argues that a stay of this matter is appropriate because (1) a stay will prevent prejudice to Ott and
13  preserve judicial resources, and (2) a stay is possible under the principle of abstention. *Id.*

14  First, Ott argues that he would be prejudiced should this court deny his stay because the McCoy
15  matter and this action have overlapping issues, including factual matters and the effect and admissibility
16  of evidence from the disciplinary proceedings. Dkt 18. Ott contends that this overlap will prejudice him
17  because he must choose which facts to reveal in each litigation, which leaves him with the choice to either
18  "vigorously resist Carolina Casualty's motion [for summary judgment], but run the risk that the evidence
19  he introduces to show a genuine issue of material fact could be used against him in the McCoy matter," or
20  to "protect his interests in the underlying case by refraining from attesting to facts that could be used
21  against him in the McCoy matter" thereby "risking that the District Court may enter summary judgment
22  against him." Dkt. 18. Ott further maintains that a stay will conserve judicial resources by preventing
23  duplication of effort regarding the overlapping issues in the McCoy matter and this matter. Dkt. 18.

24  Second, Ott argues that stay is possible under the principle of abstention, and is proper under that
25  principle according to the factors for determining whether to exercise jurisdiction over a declaratory
26  judgment action as listed in *Brillhart v. Excess Ins. Co. Of America*, 316 U.S. 491 (1942), which are (1)
27  avoiding needless determination of state law issues, (2) discouraging the filing of declaratory judgment
28  actions as a means of forum shopping, and (3) avoiding duplicative litigation. Dkt. 18. Ott asserts that all

of the *Brillhart* factors are met in this action. *Id.*

On February 22, 2010, Carolina Casualty filed its Opposition to Ott's Motion to Stay (Dkt. 23). Carolina Casualty argues that a stay is not appropriate (1) because there is no danger that any finding or declaration by this court could have a collateral estoppel effect or otherwise prejudice Ott in the McCoy matter, and (2) because stay is not appropriate under the principle of abstention. Dkt. 23. Carolina Casualty notes that in this matter the court must only decide a narrow legal issue as to whether an attorney with Ott's knowledge of various events, such as the dismissal of the Hartstrom lawsuit and the pending Bar Grievance, could reasonably anticipate, at the policy's effective date, that the McCoys might make a claim against him. Dkt. 23.

## STANDARD

A district court has the inherent power to stay its proceedings. This power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3rd Cir. 1983) (holding that the power to stay proceedings comes from the power of every court to manage the cases on its docket and to ensure a fair and efficient adjudication of the matter at hand). This is best accomplished by the "exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. When considering a motion to stay, the court weighs a series of competing interests: (1) the possible damage which may result from the granting of the stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). Additionally, case management standing alone "is not necessarily a sufficient ground to stay proceedings," *Dependable Hwy. Express, Inc. v. Navigators, Inc. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007), and indefinite stays are disfavored, *Dependable*, 498 F.3d at 1066 ; *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000).

When there is an independent proceeding related to a matter before the trial court, the Ninth Circuit has held that a trial court may "find it efficient for its own docket and the fairest course for the

parties to enter a stay of an action before it, pending resolution of independent proceedings which may bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983).  For a stay to be appropriate it is not required that the issues of such proceedings are necessarily controlling of the action before the court. *Id.*  However, a stay may be improper where the independent proceeding is "unlikely to decide, or contribute to the decision of, the factual and legal issues" in the action for which the stay is requested. *Lockyer v. State of California*, 398 F.3d 1098, 1113 (9th Cir. 2005).  In deciding whether to abstain, the Ninth Circuit instructs courts to consider "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether use of a declaratory action will result in entanglement between the federal and state court systems." *Gov't Employees Ins. Co. V. Dizol*, 133 F.3d 1220, 1225, fn. 5 (9th Cir. 1998).

There is no presumption in favor of abstention "in declaratory actions generally, nor in insurance coverage cases specifically." *Dizol*, 133 F.3d at 1225.  Moreover, Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (interpreting the Declaratory Judgment Act, 28 U.S.C. § 2201).

## DISCUSSION

The crux of Ott's motion to stay is that he believes there is sufficient overlap between the McCoy matter in state court and this matter to justify a stay.  Dkt. 18.  He contends that both cases involve questions regarding "Mr. Ott's actions and inactions, as well as what he knew or should have known," although Ott does concede that the matters are "related but separate." *Id.*  This argument implies that Ott intends to argue, in both cases, theories involving his subjective beliefs regarding his handling of the Hartstrom matter.  Although such an argument might be proper in the McCoy matter and possibly admissible here, it would not be dispositive in this matter, as explained below.

Prior knowledge limitations like the limitation contained in Carolina Casualty's insuring agreement have been construed by Washington courts to require the insured to disclose any acts or omissions that the insured could have reasonably foreseen might be a basis for a claim against him or her. *See Tewell, Thorpe & Findlay, Inc., P.S. v. Cont. Cas. Co.*, 64 Wn.App, 571 (1992); *O'Connell &*

*Assocs. v. Transamerica Indem. Co.*, 61 Wn.App. 103, 110 (1991).  Other courts have found similarly.  *See Mt. Airy v. Thomas*, 954 F.Supp. 1073 (W.D. Pa. 1997), *aff'd*, 149 F.3d 1165 (3rd Cir. 1998).  These limitations use the phrase "reasonably foresee" in order to mandate an objective, reasonable attorney standard.  *See id.*; *see also Allstate Ins. Co. V. Peasley*, 131 Wn.2d 420, 430 (2007) (interpreting the meaning of the phrase "reasonably foresee").  Under that standard, an insured "may not successfully defend on the ground that he was uniquely unaware of ethical and fiduciary principles that all lawyers would know or that he did not understand the implications of conduct and events that any reasonable lawyer would have grasped." *Selko v. Home Ins. Co.*, 139 F.3d 146 (3rd Cir. 1998).

    The above case law establishes that in considering the coverage limits of the Carolina Casualty policy this court must only decide a narrow issue as to whether an attorney with Ott's knowledge of various events, such as the dismissal of the Hartstrom lawsuit and the pending Bar Grievance, could reasonably anticipate, at the policy's effective date, that the McCoys might make a claim against him.  Ott's subjective beliefs as to whether the McCoys would file a claim or the merits of the claim are not dispositive in this matter.  Only the timing of the events surrounding Ott's handling of the Hartstrom lawsuit and the objective, reasonable understanding of an attorney in Ott's position are of consequence here.

    In the McCoy matter the state court must consider whether Ott committed malpractice under either breach of tort duty or breach of contract.  Under the breach of tort duty theory of malpractice the McCoys must prove (1) that they engaged in an attorney-client relationship giving rise to the duty of care on the part of Ott; (2) that Ott's act(s) or omission(s) breached that duty of care; (3) that they suffered damages; and (4) that Ott's breach of duty must have been the proximate cause of their damages.  *See Estep v. Hamilton*, 148 Wn.App. 246 (2008).  Alternatively, under the breach of contract theory of malpractice the McCoys must show that Ott failed to fulfill a specific term of the contract for representation.  *See Owens v. Harrison*, 120 Wn.App. 909 (2004).  The distinctions between the state court malpractice claims and the narrow issue here ensures that this court will not make findings that substantially overlap with those in state court.  The absence of substantial overlap ensures that this court will not have wasted its judicial resources.  Certainly, the plaintiff here has an interest in prompt resolution of its claim.  Accordingly, a stay is not appropriate under the general principle of fairness to

the parties and judicial economy.

Stay is also not appropriate under the principle of abstention. The Declaratory Judgment Act, 28 U.S.C. § 2201, gives this court substantial discretion in deciding whether to declare the rights of litigants. *See Wilton*, 515 U.S. at 286. Further, the Ninth Circuit has held that there is no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage. *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992) (finding that a stay would only be required if there was an action already pending in state court between the same parties on the same issue of coverage).

Contrary to Ott's contentions, Carolina Casualty properly brought this action to this court and the discretionary *Brillhart* factors for abstention are not met. First, there is nothing to suggest that Carolina Casualty has engaged in forum shopping. Second, as previously discussed, this matter involves a narrow issue of insurance coverage, and, therefore, needless determination of state law issues and duplicative litigation are not of concern in this matter.

Accordingly, it is hereby **ORDERED** that the defendant's Motion for Stay (Dkt. 18) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 26th day of March, 2010.

/s/ Robert J Bryan

Robert J Bryan
United States District Judge