1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

CAROLINA CASUALTY INSURANCE
COMPANY,

                                 Case No. C09-5540 RJB
11

                Plaintiffs,        ORDER ON PLAINTIFF
12                                 CAROLINA CASUALTY
                                   INSURANCE
13          v.                     COMPANY'S MOTION
                                   FOR SUMMARY
14   DENNIS G. OTT, individually; DENNIS G.   JUDGMENT
     OTT, P.S.,
15
                Defendants.
16

        This matter comes before the court on Plaintiff Carolina Casualty Insurance Company's Motion
17
     for Summary Judgment (Dkt. 17).  The court has considered the relevant pleadings and the file herein.
18

                                    FACTUAL BACKGROUND
19

        The following facts are undisputed unless otherwise noted:  In July 2003, lawyer Dennis G. Ott or
20
     Dennis G. Ott, P.S. (Collectively, "Ott") filed a lawsuit on behalf of Steven F. McCoy and Peggy L.
21
     McCoy, husband and wife, in the Superior Court of Lewis County, Washington.  Dkt. 1, Exhibit C; Dkt.
22
     23.  Through Ott, the McCoys asserted claims against the estate of the owner of a rock quarry on property
23
     adjacent to the McCoys' home (the "Hartstrom lawsuit").  *Id.*  In February 2005, the court clerk in the
24
     Hartstrom lawsuit notified Ott that the lawsuit would be dismissed for want of prosecution unless, within
25
     thirty days, action of record was taken or application was made to the court.  *Id.*  In March 2005, the suit
26
     was dismissed for want of prosecution.  *Id.*
27
        In September 2007, Steven McCoy filed a grievance with Washington State Bar Association
28
     ("WSBA") against Ott concerning his handling of the Hartstrom lawsuit.  *Id.*  In his response to the bar

grievance, Ott attached copies of letters dated March 24, 2004, and February 18, 2005, which Ott represented he had sent to the McCoys to confirm that they had asked him to place the lawsuit on hold (March 24, 2004 letter), and subsequently, to advise them that the case could be dismissed if they did not proceed (February 15, 2005 letter).  *Id.*  At the time, Ott knew that he had fabricated these letters.  Dkt. 1, Exhibit A.

On November 2, 2007, Ott received a letter from the McCoys' new attorney requesting turnover of the file concerning Ott's representation of the McCoys in the Hartstrom lawsuit.  Dkt. 1 Exhibit C; Dkt. 23.

In April of 2008, Ott applied for an insurance policy with Carolina Casualty Insurance Company ("Carolina Casualty").  *Id.*  When Ott applied for the policy, he did not disclose any facts relating to the dismissal of the Hartstrom lawsuit or the pending bar grievance filed by the McCoys.  Dkt. 23.  Ott contends that "[a]t that time Mr. Ott did not believe that the McCoys would file any action other than the pending disciplinary matter."  Dkt. 28.  The insuring agreement of the Carolina Casualty policy, effective April 16, 2008 to April 16, 2009, provides that the policy covers claims for Wrongful Acts that are first made and reported during the policy period, provided that prior to the effective date of the policy, "the Insured did not know, or could not reasonably foresee, that such Wrongful Act might reasonably be expected to be the basis of a Claim."  Dkt. 18; Dkt. 23.  The policy defines "Wrongful Act" as "any actual or alleged act, omission, or Personal Injury arising out of Professional Services rendered by an Insured..."  Dkt. 23.

In January 2009, the WSBA Disciplinary Counsel recommended that the WSBA Disciplinary Review Committee order the McCoys' grievance to hearing.  Dkt. 23.

In March 2009, the McCoys filed a legal malpractice action against Ott (the "McCoy" matter) in the Superior Court of Lewis County, Washington.  Dkt. 1, Exhibit C; Dkt. 23.  In the McCoy matter, the McCoys assert claims of legal malpractice/negligence, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent infliction of emotional distress.  Dkt. 1, Exhibit A.  On March 16, 2009, Ott tendered the action to his insurer, Carolina Casualty, who agreed to defend him in the McCoy matter.  *See* Dkt. 28.  Carolina Casualty hired attorney Joel Wright of Lee, Smart, Cook, Martin & Patterson, P.S., Inc. to defend Ott.  *See* Dkt. 29, Decl. of Pamela J.

DeVet, Exhibit A.  At some point, Carolina Casualty hired the firm Lewis Brisbois Bisgaard & Smith LLP as coverage counsel to investigate coverage issues with regard to Ott's policy.  Dkt. 32, Second Aff. of Robert A. Chaney.

Carolina Casualty contends that on June 8, 2009, it sent a reservation of rights letter to Ott by email and U.S. Postal Mail.  Dkt. 33, Second Aff. of Robert Irish.  Carolina Casualty states that in the letter it quoted the insuring agreement and specifically reserved its right on the basis of the policy's prior knowledge limitation:

> "The McCoys allege that on March 16, 2005, their lawsuit against the Hartstrom Estate was dismissed for want of prosecution.  The plaintiffs [the McCoys] further allege that they filed a grievance with the Washington State Bar Association Office of Disciplinary Counsel concerning your handling of the lawsuit.  Although the date of filing is not alleged, the grievance was apparently filed in or prior to January 2008.  These matters occurred prior to the effective date of the policy effective April 16, 2008 to April 16, 2009, the first policy issued to you by Carolina Casualty.  Accordingly, Carolina Casualty reserves its right to decline coverage on the basis that prior to the effective date of the policy, you knew or could have reasonably foreseen that the Wrongful Acts alleged by the McCoys might be the basis of a Claim against you.  If that is the case, the Claim would not fall within the insuring agreement of the policy and Carolina Casualty would have no duty to defend or indemnify you with respect to the McCoys' lawsuit.
>
> Reference to the above policy provision is not intended as a waiver of any of Carolina Casualty's rights under the policy.  Carolina Casualty reserves its rights under all terms and conditions of the policy, whether referred to herein or not, in connection with its defense and investigation of this matter.  Carolina Casualty also reserves its right to modify, supplement, and/or amend this coverage letter at any time in the future to assert any defense, which may now or later be applicable.  Further, Carolina Casualty reserves the right to file a declaratory judgment action for a declaration of its obligation to provide coverage for the McCoy's lawsuit, if any, and/or seek rescission of the policy."

*Id.* at Exhibit A.  Carolina Casualty highlights that it sent the letter eight weeks after it retained defense counsel for Ott and 13 days after the defendants filed an answer in the McCoy matter.  *Id.*  Ott is silent on the subject of Carolina Casualty's June 8, 2009 letter.  Dkt. 31.  However, Ott does agree that Mr. Irish mentioned the possibility of a coverage claim against Ott to defense counsel in the McCoy matter on two occasions (via email): (1) on June 11, 2009, Mr. Irish told defense counsel "Also, our cov'g counsel is continuing to eval. for cov'g," and (2) on August 5, 2009, Mr. Irish told defense counsel, "We may bring a DJ cov'g action against the IN.  Will let you know if we decide to pursue that."  Dkt. 29, Decl. of Pamela J. DeVet.  Despite those communications, Ott contends that Carolina Casualty "has already had

1   exclusive control of the defense [of the McCoy matter] for over a year," and has "failed to allege or

2   produce any evidence that it undertook a defense under a reservation of rights."  Dkt. 28.

3       Ott also contends that Carolina Causality's claims attorney,[1] Robert Irish, obtained information

4   about the bar proceedings against Ott in conjunction with the defense of the McCoy matter and then

5   inappropriately used that information in this matter.  *Id.*  Carolina Casualty contends that "Carolina

6   Casualty (Monitor Liability Managers) did not ever provide Carolina Casualty's coverage counsel, Lewis

7   Brisbois Bisgaard & Smith LLP, with a copy of the Aff. of Dennis G. Ott Resigning from Membership in

8   the Washington State Bar Association, or the Statement of Alleged Misconduct Under ELC 9.3(b)(1)..."

9   Dkt. 32, Second Aff. of Robert A. Chaney.  Carolina Casualty further contends that "[n]o claim

10  representative of Carolina Casualty (Monitor Liability Managers) ever advised coverage counsel of the

11  existence of these documents or requested that coverage counsel obtain a copy of the documents to

12  support Carolina Casualty's coverage position."  *Id.*

13      In June 2009, Ott filed a Notice of Resignation in Lieu of Disbarment with the WSBA.  *Id.*

14  Attached to his notice, Ott submitted an affidavit admitting to facts relating to his handling of matters for

15  various clients, including the McCoys.  *Id.*  Ott admitted in the affidavit that the March 24, 2004 and

16  February 15, 2005 letters were fabricated, and that he had not advised the McCoys of the dismissal of the

17  Hartstrom lawsuit.  *Id.*  Ott also acknowledged that he had received the November 2, 2007 letter from the

18  McCoys' new attorney requesting turnover of the file concerning Ott's representation of the McCoys, and

19  that he did not respond to that letter.  *Id.*

20      On September 4, 2009, with the McCoy matter pending in state court, Carolina Casualty initiated

21  this action against its insured, Ott, seeking a declaration that it has no duty to defend or indemnify Ott in

22  the McCoy matter.  Dkt. 1.

23                      <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

24      On January 29, 2010, Carolina Casualty filed its motion for summary judgment (Dkt. 17), and

25  contended that there can be no genuine issue of material fact that, prior to the effective date of the policy,

26  any attorney with Ott's knowledge of various undisputed facts could have reasonably foreseen that the

27

28      [1]Robert Irish is employed as a Senior Claims Attorney with Monitor Liability Managers, Inc.
    ("Montitor"), and Monitor acts as a managing underwriting agent and in that capacity underwrites policies
    and handles claims for Carolina Casualty.  Dkt. 17-3, Aff. of Robert Irish.

McCoys might make a claim.  Dkt. 17.  Carolina Casualty also requested that the court enter a declaratory judgment that Carolina Casualty has no obligation to reimburse Ott for defense costs incurred in the bar grievance proceeding because the bar grievance proceeding began before the beginning of the policy period.

On February 11, 2010, the defendant filed a Motion to Stay (Dkt. 18), and requested that the court stay this proceeding during the determination of the McCoy matter in state court.  On February 12, 2010, the defendant filed a Motion to Enlarge Time to Respond to Motion for Summary Judgement (Dkt. 20), requesting that the court move his due date for response to the motion for summary judgment to a date after the court ruled on the motion to stay.  On February 19, 2010, the parties filed their Stipulated Motion and Order Re Defendant Ott's Motion to Enlarge Time (Dkt. 20) to Respond to Motion for Summary Judgment (Dkt. 17), agreeing to set the due date for the defendant's response to the motion for summary judgment for ten court days from the date of the denial of the defendant's motion to stay, should the court deny stay.  Dkt. 22.  On March 26, 2010, the court denied the defendant's motion to stay (Dkt. 26) and renoted Carolina Casualty's summary judgment motion for April 23, 2010 (Dkt. 27).

On April 9, 2010, Ott filed its Opposition of Dennis G. Ott and Dennis G. Ott P.S. to Plaintiff's Motion for Summary Judgment (Dkt. 28).  Ott argues that (1) Carolina Casualty cannot discharge its defense obligations in the McCoy matter because it has not provided evidence that it properly reserved its rights or it should be estopped from denying defense, and (2) the issue of whether a policyholder knew or should have known of a potential claim at the time the policy was procured is a question of fact that cannot be decided on summary judgment.  Dkt. 28.

On April 20, 2010, Carolina Casualty filed Plaintiff Carolina Casualty Insurance Company's Reply in Support of Motion for Summary Judgment (Dkt. 31).  Carolina Casualty argues that summary judgment is available, and should be granted, because (1) it properly reserved its rights and should not be estopped from relying on the insuring agreement for a coverage defense, and (2) because there is no genuine issue of material fact that, prior to the effective date of the policy, any attorney with Ott's knowledge of various undisputed facts could have reasonably foreseen that the McCoys might make a claim.  Dkt. 31.

STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, unspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

DISCUSSION

Ott sets forth two reasons why he believes summary judgment is unavailable: (1) Carolina Casualty cannot discharge its defense obligations in the McCoy matter because it has not provided evidence that it properly reserved its rights or it should be estopped from denying defense, and (2) the

issue of whether a policyholder knew or should have known of a potential claim at the time the policy was procured is a question of fact that cannot be decided on summary judgment. Dkt. 28. The court will discuss, in turn, each argument.

*1. Carolina Casualty properly defended Ott under a reservation of rights*

As described above, Ott argues that Carolina Casualty cannot discharge its defense obligations because it has not provided evidence that it properly reserved its rights when it accepted defense of the McCoy matter, or because Carolina Casualty is estopped from discharging its defense obligations. Dkt. 28. Ott contends that the lack of proof of reservation of rights shows wavier of that right. *Id.* Further, Ott argues that Carolina Casualty is estopped from denying its defense obligations because the length of time for which Carolina Casualty has assumed defense prevents Carolina Casualty from withdrawing that defense. *Id.* Additionally, Ott argues that Carolina Casualty is estopped from denying its defense obligations because it acted in bad faith by commingling information obtained in its defense of Ott with information used against Ott in this coverage action, including the January 13, 2009 letter from the WSBA containing the results of its grievance investigation and Ott's resignation affidavit. Dkt. 28; Dkt. 29, Decl. Of Pamela J. DeVet. Ott alleges further bad faith on the basis of "Carolina Casualty's secretive approach to notifying Mr. Ott of the case against him, including waiting 6 weeks to serve him," which Ott contends "evidences a breach of the duty to deal honestly with its policyholder." *Id.*

In response, Carolina Casualty contends that it provided a proper reservation of rights in its letter to Ott on June 8, 2009. Dkt. 33, Second Aff. of Robert Irish. Carolina Casualty argues that the length of time it provided defense for Ott was not long enough to prejudice Ott, and, therefore, Carolina Casualty is not estopped from denying defense. Dkt. 31. Further, Carolina Casualty argues that it has not commingled Ott's defense and this coverage action because it retained separate counsel for each matter and counsel did not share information, and, therefore, it is not estopped from denying its defense obligations. Dkt. 32, Second Aff. of Robert A. Chaney.

Under Washington law, when an insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 761 (2002). A reservation of rights is a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and

estoppel.  *Id.*  "When that course of action is taken, the insured receives the defense promised, and, if coverage is found not to exist, the insurer will not be obligated to pay."  *Id.* (*citing Kirk v. Mt Airy Ins. Co.*, 134 Wn.2d 558, 563 n.3 (1998)).

The Ninth Circuit has considered how the law of waiver and estoppel applies in Washington when an insurance company is accused of waving or breaching its duty to defend its insured.  *See Underwriters at Lloyds v. Denali Seafoods, Inc.*, 927 F.2d 459 (9th Cir. 1991).  With regard to waiver, the Ninth Circuit determined that waiver can preclude an insurance company from raising a coverage defense after it agreed to defend an action without reserving rights.  *Id.* at 462 (*internal citations omitted*).  However, because waiver is the voluntary or intentional relinquishment of a known right, the insured must show substantial evidence of the insurer's intent to effect a waiver.  *Id.*  Failure to reserve rights due to error or oversight does not show the requisite intentional decision to waive a coverage defense.  *Id.*

Estoppel, unlike wavier, does not focus on the intent of the insurer; it arises as a matter of law to preclude an insurer from asserting a right or defense when it would be inequitable to permit the assertion.  *Id.*  When determining whether an insurer is estopped from denying coverage, the focus is on the insured's justifiable reliance and whether or not it was prejudiced by the insurer's actions.  *Id.*  Except in extreme cases, actual prejudice must be proven in Washington to estop an insurer from asserting a coverage defense.  *Id.*  Any case in which the insurer actually acted in bad faith is an extreme case, therefore, courts will presume prejudice in any case in which the insurer acted in bad faith.  *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 391 (1992).  An insurer can avoid acting in bad faith by fulfilling the following criteria:  First, the company must thoroughly investigate the cause of the insured's claim.  *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 388 (1986).  Second, it must retain competent defense counsel for the insured, and both retained defense counsel and the insurer must understand that only the insured is the client.  *Id.*  Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the process of the lawsuit.  *Id.*  Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.  *Id.*

An insurer's bad faith gives rise to a tort action for bad faith, *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484 (2003), or an estoppel from denying a defense that was undertaken under a reservation of rights, *Butler*, 118 Wn.2d at 391.  An insurer is entitled to summary judgment of a policyholder's bad faith claim, and therefore is not estopped from denying its defense obligations, if there are no disputed material facts pertaining to the reasonableness of the insurer's conduct under the circumstances, or if the insurance company is entitled to prevail as a matter of law on the facts construed most favorable to the nonmoving party.  *Smith*, 150 Wn.2d at 484.

Even without a showing of bad faith, an insurer may still be estopped from suddenly denying coverage when the insurer has conducted the defense for a long period of time so as to prejudice the insured.  *See Transamerica Ins. Group v. Chubb and Son, Inc.*, 16 Wn. App. 247 (1976) (insurer was estopped from denying coverage when it had "irrevocably fixed the course of events concerning the insured's lawsuit for the first 10 months in which the insurer had defended the insured"); *but c.f.*, *Denali Seafoods*, 927 F.2d at 463 (insurer was not estopped from denying coverage after defending without a reservation of rights for four months).  Whether an insurer's acts prejudice the insured is a question of fact and the traditional summary judgment standards apply.  *Butler*, 118 Wn.2d at 395.

### a. Reservation of Rights

Ott has not shown any genuine issue of material fact as to whether Carolina Casualty properly defended him under a reservation of rights.  Ott contends that Carolina Casualty has not shown evidence of its reservation of rights, but Carolina Casualty has provided such evidence through its June 8, 2009 letter reserving rights (Dkt. 33, Second Aff. of Robert Irish).  Ott has not refuted this evidence through affidavit, declaration, or otherwise.  Accordingly, Carolina Casualty should be deemed to have provided Ott with a proper reservation of rights.

### b. Waiver

Ott has not asserted any facts that would show Carolina Casualty's voluntary or intentional relinquishment of its right to assume Ott's defense under a reservation of rights; therefore, Ott has not shown a genuine issue of material fact as to whether Carolina Casualty waived the reservation it provided.  Accordingly, Carolina Casualty should be deemed not to have waived its ability to deny defense.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*c. Estoppel*

Ott also has not shown any genuine issue of material fact that Carolina Casualty should be estopped from denying defense. Ott has not raised an issue of material fact as to (i) whether the length of time for which Carolina Casualty provided his defense has prejudiced him so as to estop Carolina Casualty from denying defense, or (ii) whether Carolina Casualty acted in bad faith and allegedly commingled information obtained in its defense of Ott with information used against Ott in this coverage action so as to estop Carolina Casualty from denying defense.

*ii. Estoppel because of Length of Time of Defense*

First, Ott has not raised an issue of material fact as to whether the length of time for which Carolina Casualty provided his defense has prejudiced him so as to estop Carolina Casualty from denying defense. Carolina Casualty has shown that it sent its June 8, 2009 letter reserving rights less than three months after Ott tendered his claim, just eight weeks after Carolina Casualty retained defense counsel for Ott, and just 13 days after Ott provided answer in the McCoy matter. This brief period of defense before a reservation of rights is well within the Ninth Circuit's limitations on an insurer's defense prior to a reservation of rights. *See Denali Seafoods*, 927 F.2d at 463 (insurer was not estopped from denying coverage after defending without a reservation of rights for four months). Accordingly, the length of time Carolina Casualty provided defense without a reservation of rights should not estop it from denying defense.

*iii. Estoppel because of Bad Faith*

Second, Ott has not raised an issue of material fact as to whether Carolina Casualty acted in bad faith and allegedly commingled information obtained in its defense of Ott with information used against Ott in this coverage action so as to estop Carolina Casualty from denying defense. In support of his argument Ott cited *Ellwein v. Hartford Accident and Indem. Co.*, 142 Wn.2d 766 (2001), for the proposition that it is bad faith for an insurer to commingle coverage litigation against its insured with its liability representation of its insured. Ott's reliance on *Ellwein* is misplaced. That case is distinguishable from the matter at hand. In *Ellwein*, the insurer represented its insured in an automobile accident liability case but also represented itself as the uninsured motorist payor when it assumed the defense of the adversary uninsured motorist. *Ellwein*, 142 Wn.2d 766 (2001). It was in that context that the court

commented, as Ott quotes, "we find it particularly troubling that the insurer may 'commingle' the liability representation with the UIM file in such a way." *Id.* at 782. The court found disturbing the insurer's commingling of the insured's liability representation with the insurer's liability opposition in the same matter. *Id.* Here, unlike in *Ellwein*, Ott is contending that Carolina Casualty commingled its insured's liability representation in one matter with Carolina Casualty's coverage claims in a separate matter.

In this posture, Carolina Casualty nevertheless must act in good faith by hiring an attorney to defend Ott, and that defense counsel must understand that it is Ott, and not Carolina Casualty, who is the client. *Tank*, 105 Wn.2d at 388. But, Carolina Casualty is also entitled to provide Ott's defense under a reservation of rights and it is entitled to seek a declaratory judgment that it has no duty to defend. *Truck*, 147 Wn.2d 761. In doing so, Carolina Casualty must act in good faith by fully informing the insured of the reservation of rights defense and all development relevant to the policy coverage and the process of the lawsuit. *Tank*, 105 Wn.2d at 388. Carolina Casualty must also refrain from engaging in any action that would show greater interest for its own risk than for the insured's risk. *Id.*

Ott has not raised an issue of fact as to whether Carolina Casually acted in bad faith according to the requirements above. Carolina Casualty has shown that it properly hired two sets of counsel, one set to handle each matter. Contrary to Ott's contention, Mr. Irish's communication with both sets of counsel does not "support[] the conclusion of commingling of the files." Ott has not provided sufficient, specific allegations of commingling that would show Carolina Casualty's greater interest for its own risk. Ott merely provided an affidavit stating that he provided documents related to his bar discipline to his defense counsel in the McCoy matter, who was provided to him by Carolina Casualty under the direction of Mr. Irish (a claims attorney for Carolina Casualty). Ott's affidavit asserts that his defense counsel provided the bar discipline documents to Mr. Irish, but the affidavit does not assert that Mr. Irish in turn provided these documents to Carolina Casualty's separate coverage counsel in this matter. This missing fact cannot be assumed in Ott's favor. *See Lujan*, 497 U.S. at 888-89. Moreover, Carolina Casualty has provided the missing fact in affidavit and stated that "Carolina Casualty (Monitor Liability Managers) did not ever provide Carolina Casualty's coverage counsel, Lewis Brisbois Bisgaard & Smith LLP, with a copy of the Aff. of Dennis G. Ott Resigning from Membership in the Washington State Bar

Association, or the Statement of Alleged Misconduct Under ELC 9.3(b)(1)..." and that "[n]o claim representative of Carolina Casualty (Monitor Liability Managers) ever advised coverage counsel of the existence of these documents or requested that coverage counsel obtain a copy of the documents to support Carolina Casualty's coverage position." Dkt. 32, Second Aff. of Robert A. Chaney. Accordingly, Carolina Casualty's handling of Ott's defense and this coverage action should not estop it from denying its defense obligations.

Ott also alleges that Carolina Casualty showed bad faith on the basis of "Carolina Casualty's secretive approach to notifying Mr. Ott of the case against him, including waiting 6 weeks to serve him" (Dkt. 28). Ott's contention of "secretive" notification is unsupported by the record. Ott agrees that Mr. Irish alerted Ott's defense counsel of the possibility of a coverage claim against Ott on two occasions (via email): (1) on June 11, 2009, Mr. Irish told defense counsel "Also, our cov'g counsel is continuing to eval. for cov'g," and (2) on August 5, 2009, Mr. Irish told defense counsel, "We may bring a DJ cov'g action against the IN. Will let you know if we decide to pursue that." Dkt. 29, Decl. of Pamela J. DeVet. Carolina Casualty has also shown that it alerted Ott of the potential for a coverage action in its June 8, 2009 letter reserving rights. Carolina Casualty then filed this coverage action against Ott and served him within 120 days after the complaint was filed as required by Fed. R. Civ. P. 4(m). These actions do not show a secretive approach to notifying Ott of the case against him. Accordingly, Carolina Casualty's methods of informing Ott of the coverage claim against him should not estop it from denying defense.

*2.  Carolina Casualty does not have a duty to defend or indemnify Ott in connection with the McCoy matter*

As described above, Carolina Casualty argues that on the basis of the undisputed facts there can be no genuine question of material fact that prior to the April 16, 2008 effective date of the policy, any reasonable attorney in Ott's position could have foreseen that the McCoys might make a claim for damages. Dkt. 17. Carolina Casualty argues that the McCoys' claim does not fall within the insuring agreement of the policy and Carolina Casualty does not have a duty to defend or indemnify Ott in connection with the McCoy matter. *Id.* In response, Ott argues that he believed, as other reasonable attorneys could, that the McCoys would not make a claim against him or that the claim would end with the WSBA. Dkt. 28.

Ott further contends that the issue of whether the prior knowledge limitation of the policy applies

1    is a question of fact that must be decided by a jury and cannot be decided on summary judgment.  *Id.*

2    Carolina Casualty contends that the issue can be decided on summary judgment and argues that Ott's

3    subjective belief about the McCoys' potential claim is irrelevant.  Dkt. 31.

4              *a.  Insuring Agreement*

5              The insuring agreement of the Carolina Casualty policy, effective April 16, 2008 to April 16,

6    2009, provides that the policy covers claims for "Wrongful Acts" that are first made and reported during

7    the policy period, provided that prior to the effective date of the policy, "the Insured did not know, or

8    could not reasonably foresee, that such Wrongful Act might reasonably be expected to be the basis of a

9    Claim."  Dkt. 18; Dkt. 23.  The policy defines "Wrongful Act" as "any actual or alleged act, omission, or

10   Personal Injury arising out of Professional Services rendered by an Insured..."  Dkt. 23.  This type of

11   exclusionary language is known as a prior knowledge limitation, and similar prior knowledge limitations

12   have been construed by Washington courts to require the insured to disclose any acts or omissions that

13   the insured could have reasonably foreseen might be a basis for a claim against him or her.  *See Tewell,*

14   *Thorpe & Findlay, Inc., P.S. v. Cont. Cas. Co.*, 64 Wn. App, 571 (1992); *O'Connell & Assocs. v.*

15   *Transamerica Indem. Co.*, 61 Wn. App. 103, 110 (1991).  Other courts have found similarly.  *See Mt.*

16   *Airy v. Thomas*, 954 F.Supp. 1073 (W.D. Pa. 1997), *aff'd*, 149 F.3d 1165 (3d Cir. 1998).

17             These limitations use the phrase "reasonably foresee" in order to mandate an objective,

18   reasonable attorney standard.  *See id.*; *see also Allstate Ins. Co. V. Peasley*, 131 Wn.2d 420, 430 (2007)

19   (interpreting the meaning of the phrase "reasonably foresee").  Under the reasonable attorney standard,

20   an insured "may not successfully defend on the ground that he was uniquely unaware of ethical and

21   fiduciary principles that all lawyers would know or that he did not understand the implications of conduct

22   and events that any reasonable lawyer would have grasped."  *Selko v. Home Ins. Co.*, 139 F.3d 146 (3d

23   Cir. 1998).  Such subjective beliefs "could too easily be related after the fact to excuse any attorney's

24   failure to report known potential claims."  *Mt. Airy v. Thomas*, 954 F. Supp. 1073, 1079 (W.D. pa. 1997),

25   *aff'd*, 149 F.3d 1165 (3d Cir. 1998).  Further, the language of such clauses does not require the prediction

26   of claims with "absolute certainty or exactitude," and "the foreseeability of a claim is distinct from the

27   question of whether a foreseeable claim has any merit."  *Tewell*, 64 Wn. App. at 576-77.

28             The above case law establishes that in considering the coverage limits of the Carolina Casualty

ORDER
Page - 13

1    policy this court must decide whether an attorney with Ott's knowledge of various events could

2    reasonably anticipate, at the policy's effective date, that the McCoys might make a claim against him.

3    Ott's subjective beliefs as to whether the McCoys would file a claim or the merits of the claim are not

4    dispositive in this matter.  Therefore, Ott's argument that he did not suspect the McCoys' claim against

5    him does not itself place the matter within the coverage of the insuring agreement.

6            It is undisputed that prior to the effective date of the policy, the Superior Court of Lewis County,

7    Washington dismissed the Hartstrom lawsuit for want of prosecution; that Ott did not inform the McCoys

8    of the dismissal; that Steven McCoy filed a grievance with the WSBA; that in Ott's response to the bar

9    grievance he filed two fabricated letters from him to the McCoys; and that the McCoys retained new

10   counsel who requested that Ott provide them with a copy of the client file.  A reasonable attorney with

11   Ott's knowledge of these facts would have understood that a claim might arise out of Ott's handling of

12   the Hartstrom matter.  Therefore, under the terms of the insuring agreement, Ott was required to notify

13   Carolina Casualty of that potential claim, regardless of his subjective prediction about the outcome of the

14   McCoys' bar grievance.  Because Ott did not notify Carolina Casualty of the potential claim, the McCoy

15   matter does not fall within the insuring agreement of the policy and Carolina Casualty does not have a

16   duty to defend or indemnify Ott in connection with the McCoy matter.  Accordingly, Carolina Casualty's

17   motion for summary judgment should be granted.

18                            *b. Prior Knowledge Limitation on Summary Judgment*

19           Ott challenges the court's authority to make a determination of the application of the prior

20   knowledge limitation to the facts at hand.  Dkt. 28.  Ott cites the court's reversal of summary judgment in

21   *O'Connell & Assocs. v. Transamerica Indem. Co.*, 61 Wn. App. 103, 110 (1991), as proof of his

22   proposition that a jury determination is required.  Ott's reliance on *O'Connell* is misplaced.  In

23   *O'Connell*, the court reversed summary judgment and remanded for trial where the insured, under a

24   similar prior knowledge limitation, did not disclosure a potential claim when the insured, who was an

25   insurance broker, only knew that his clients were dissatisfied with the life insurance policies they

26   purchased; knew that they threatened to report the matter to the Insurance Commissioner; and disputed

27   whether he had received a letter from his clients' attorney voicing that the clients were dissatisfied

28   because they felt the broker had committed an error.  *O'Connell*, 61 Wn. App. 103.  The facts known to

the broker in *O'Connell* are not comparable to the undisputed facts known by Ott in this matter.  In *O'Connell* it was disputed whether the broker knew or should have known that his clients accused him of a wrongful act.  Here, it is undisputed that Ott knew the McCoys accused him of wrongful acts.

Further, neither *O'Connell* nor *Tewell, Thorpe & Findlay, Inc., P.S. v. Cont. Cas. Co.*, 64 Wn. App, 571 (1992), stand for the rule that the language of the prior knowledge limitation automatically excludes the possibility of a summary judgment ruling.  To the contrary, *O'Connell* suggests that summary judgment may be appropriate under some set of facts.  Moreover, courts in many jurisdictions have granted summary judgment to insurers on the basis of prior knowledge limitations in insuring agreements.  *See, e.g., Coregis Ins. Co. v. McCollum*, 961 F. Supp. 1572 (M.D. Fla. 1997), *aff'd*, 172 F.3d 881 (11th Cir. 1999); *Carosella & Ferry, P.C. v. TIG Ins. Co.*, 189 F. Supp.2d 249 (E.D. Pa. 2001). Accordingly, this court has authority to make a determination on summary judgment of the application of the prior knowledge limitation to the facts at hand, and Carolina Casualty's motion for summary judgment should be granted.

Carolina Casualty also requested that the court enter a declaratory judgment that Carolina Casualty has no obligation to reimburse Ott for defense costs incurred in the bar grievance proceeding because the bar grievance proceeding began before the beginning of the policy period.  Dkt. 17.  Carolina Casualty's policy provides that it will cover expenses related to defense of an insured in a proceeding before a licensing board only "if such legal fees, costs, or expenses are incurred after notice is first received by the Insured during the Policy Period."  *Id.*  Carolina Casualty explains that Ott received notice of the bar grievance no later than November 6, 2007, which was the date he responded to the bar grievance, and that date occurred before the beginning of the policy period on April 16, 2008.  *Id.*  Ott has not responded to this argument.  Accordingly, Carolina Casualty should not be obligated to reimburse Ott for defense costs incurred in the bar grievance proceedings and declaratory judgment should be entered in Carolina Casualty's favor.

Accordingly, it is hereby **ORDERED** that Plaintiff Carolina Casualty Insurance Company's Motion for Summary Judgment (Dkt. 17) is **GRANTED**.  Declaratory judgment is hereby granted as follows: Carolina Casualty has no duty to defend or indemnify Dennis G. Ott and Dennis G. Ott P.S. in

the McCoy matter under the insurance policy at issue in this case and is not obligated to reimburse Ott for defense costs incurred in the bar grievance proceedings.  This case is dismissed.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 7th day of May, 2010.

Robert J. Bryan
United States District Judge